UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANICE WILLIAMS and | ) |
| ISAIAH WILLIAMS, Individually, on behalf of | ) |
| next of kin, and as Co-Personal Representatives | ) |
| of the Estate of Cameron Taihi | ) |
| Williams, deceased | ) |
| 424 Delafield Place, NW | ) |
| Washington, DC 20011 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON METROPOLITAN AREA | ) |
| TRANSIT AUTHORITY | ) |
| 600 Fifth Street, N.W. | ) |
| Washington, D.C. 20001 | ) |
| Serve:  Registered Agent | ) |
|    Carol O'Keeffe, Esquire | ) |
|    General Counsel | ) |
|    WMATA | ) |
|    600 Fifth Street, NW | ) |
|    Washington, DC 20001 | ) |
| | ) |
|  and | ) |
| | ) |
| ALSTOM SIGNALING, INC. | ) |
| 1025 John Street | ) |
| West Henrietta, NY 14586 | ) |
| (800) 717-4477 | ) |
| Serve:  Registered Agent | ) |
|    CT Corporation System | ) |
|    1015 15th Street, N.W. | ) |
|    Suite 1000 | ) |
|    Washington, D.C. 20005 | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Janice Williams and Isaiah Williams, Individually and as Co-Personal

Representatives of the Estate of Cameron Taihi Williams, by and through their counsel, Jack H.

Olender & Associates, P.C., state as follows:

## JURISDICTION

1.      Original jurisdiction vests in this court pursuant to D.C. Code § 9-1107.01(81).

## PARTIES

2.      Plaintiff Janice Williams is the mother of Cameron Taihi Williams, deceased.

Plaintiff Isaiah Williams is the brother of Cameron Taihi Williams, deceased. They are the Co-

Personal Representatives of the Estate of Cameron Taihi Williams, having been duly appointed

by the Probate Division of the Superior Court of the District of Columbia on July 13, 2009. The

plaintiffs reside at 424 Delafield Place, NW, Washington, DC 20011.

3.      Defendant Washington Metropolitan Area Transit Authority (WMATA) is

a quasi-governmental body in the form of an interstate compact agency, established pursuant to

the laws of the District of Columbia, State of Maryland and Commonwealth of Virginia and

maintains its principal office in the District of Columbia.

4.      Defendant Alstom Signaling Inc. ("Alstom") is a Delaware Corporation

with its principal place of business in New York during the time period relevant to the factual

allegations contained in this Complaint.

## FACTS

5.      Defendant WMATA was created when Congress approved the

Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §

9-1107.01 *et seq.*, that was signed by the District of Columbia, Maryland and Virginia.

6.     By the terms of the WMATA Compact creating it, WMATA is liable...

for its torts and those of its Directors, officers, employees and agent committed in the conduct of

any proprietary function . . . ." D.C. Code § 9-1107.01(80).

7.     The provision of mass transportation is a proprietary function within the

meaning of the WMATA Compact.

8.     Defendant Alstom Signaling Inc. provided, at times relevant to the claims

asserted herein, train traffic control equipment, software and support services to WMATA.

9.     On June 22, 2009, at approximately 5:02 p.m., Cameron Taihi Williams, age 37,

was a passenger for hire and was riding on Car 1079, the first car of WMATA Train 112, on the

Red Line heading south from the Takoma to the Fort Totten Metrorail stations in the District of

Columbia.

10.     The six cars in Train 112 were part of the 1000 series, which are some of

the oldest in the transit network, dating to the founding of the system, purchased between 1974

and 1978 from Rohr Industries.

11.     Federal investigators considered the cars to be unsafe because of a

tendency during a crash to collapse into one another like a telescope, reducing the "survivability

space," which is the area in a car in which passengers can escape harm.

12.     After two WMATA trains collided in a fatal accident on January 6, 1996,

at the Shady Grove Metrorail station, the National Transportation Safety Board (NTSB)

recommended in a report released on October 29, 1996, that WMATA strengthen the skeleton of

its rail cars to prevent telescoping.

13.     WMATA did not follow that recommendation, on the grounds that it

would be too expensive and disruptive to carry out.

14.     After a Rohr train telescoped during a crash on November 3, 2004, at the

Woodley Park-Zoo/Adams Morgan Metrorail station, the NTSB recommended in a report

released on March 23, 2006, that WMATA retire the Rohrs or strengthen their frames to prevent

collapse.

15.     WMATA declined, saying that the cars make up one-third of the fleet and

that WMATA could not afford to mothball them ahead of their planned retirement in 2014, and

that retrofitting would be costly and impractical.

16.     The NTSB disagreed with WMATA's stance, calling it "unacceptable" at

the time.

17.     WMATA trains operate in married pairs of cars, and the lead car is almost

always an "A" car, which runs more smoothly and communicates better with the electronic

devices buried along the track.

18.     In the case of Train 112 however, the lead car was a "B" car.

19.     About eight miles down the track, WMATA Train 214, which also had six

cars, had stopped on a curved section of the track that was near the Fort Totten

20.     The moving train (Train 112) was operating in automatic mode, in which

onboard computers should have controlled its speed and stopped it before it got too close to the

stationary strain (Train 214).

21.     The first two cars of the moving train (Train 112) were two months

overdue for scheduled maintenance of some braking components.

22.     As Train 112 approached Train 214 at a distance of approximately 300 to

400 feet, the operator of Train 112 activated the emergency brakes by depressing the emergency

brake button, known as the "mushroom."

23.     Train 112 collided with Train 214 however, which was pushed forward

seven feet.

24.     The force of the impact sheared Car 1079 of Train 112, pushing part of it

onto the roof of the trailing car of Train 214 and slamming the rest into the body of Train 214.

Two-thirds of Train 112's lead car was crushed when the car telescoped.

25.     The collision resulted in the deaths of 9 people, including Cameron Taihi

Williams, physical injuries to at least 70-80 other individuals and emotional injuries of everyone

who experienced the horrific event and its aftermath.

## COUNT I
## NEGLIGENT OPERATION OF RAIL SYSTEM
## (WMATA)

26.     The Plaintiffs reallege and incorporates by reference the allegations

contained in the preceding paragraphs of the Complaint, and further allege:

27.     The Plaintiffs are informed and believe, and therefore allege, that at all times

mentioned herein, WMATA's trains, railroad operations, tracks and adjoining railroad tracks

(hereinafter "said property") were owned, controlled, operated, managed,constructed, maintained,

repaired, designed, evaluated, built, overseen, patrolled and supervised by WMATA.

28.     On or about June 22, 2009, and prior thereto, Defendant WMATA was

responsible for maintaining and ensuring the safe use and proper condition of said railroad

operations and property, including locomotives, trains, signs, signals, switches, safety devices,

communication devices and other equipment at and along said property, and for properly and

safely managing, overseeing and coordinating the travel of railroad trains upon and along said property.

29.     At all times mentioned herein, WMATA, as a common carrier, owed a duty of reasonable care to the passengers, including Cameron Taihi Williams.

30.     Upon information and belief, on and prior to June 22, 2009, the tracks between the Takoma and the Fort Totten Metrorail stations in the District of Columbia, the trains, signs, signals, switches, safety devices, communication devices, and other equipment located in the vicinity were, as a result of the negligent or other culpable conduct of WMATA, in an improper, dangerous and/or defective condition that was known or should have been known by Defendant WMATA that created a substantial risk of injury when the area, trains and equipment were used in a reasonably foreseeable manner.

31.     Furthermore, WMATA negligently, carelessly and wrongfully failed to take reasonable precautions to prevent injury to its passengers and to guard them from injury and death, by, among other respects, failing to properly control and maintain its equipment.

32.     As a direct and proximate result of the negligence of Defendant WMATA, Train 112, on which Cameron Taihi Williams was a passenger, collided with Train 214 between the Takoma and the Fort Totten Metrorail stations in the District of Columbia on June 22, 2009, at 5:02 p.m., causing Cameron Taihi Williams to sustain severe, multiple and lethal injuries leading to his death, as well as to experience severe pain and suffering, fear and anticipation of impending injury and death, and emotional distress, both prior to and after impact of the colliding trains.

## COUNT II
## NEGLIGENCE - FAILURE TO DISCONTINUE USAGE OF
## DEFECTIVE AND UNSAFE RAIL CARS
## (WMATA)

33.     The Plaintiffs reallege and incorporate by reference the allegations

contained in the preceding paragraphs of the Complaint, and further allege:

34.     At all times mentioned herein, WMATA as a common carrier, owed a duty of

reasonable care to the passengers, including Cameron Taihi Williams.

35.     WMATA was on clear and direct notice from the NTSB that the Rohr 1000 series

cars should be removed from the fleet because their "crashworthiness" was inadequate and their

propensity to telescope during a collision was an unreasonable risk to passengers. Despite these

direct warnings and notices, WMATA did not remove these cars from the tracks, which was

negligent and placed passengers in direct danger. Since the tragedy, WMATA has placed the

1000 series cars in the middle of the trains.

36.     As a direct and proximate result of the negligence of WMATA, Train 112, on

which Cameron Taihi Williams was a passenger for hire and riding, collided with Train 214 and

telescoped for approximately two-thirds of the length of the car eliminating the survivability

space for nine individuals on board, including Cameron Taihi Williams.  Because Train 112

collided with the cars on Train 114 which were newer and more crashworthy, Train 112 and its

passengers endured the brunt of the impact and caused Cameron Taihi Williams to sustain

severe, multiple and lethal injuries leading to his death, as well as to experience severe pain and

suffering, fear and anticipation of impending injury and death, and emotional distress, both prior

to and after impact of the colliding trains.

## COUNT III
## NEGLIGENT MAINTENANCE OF BRAKING SYSTEMS
## (WMATA)

37.    The Plaintiffs reallege and incorporate by reference the allegations

contained in the preceding paragraphs of the Complaint, and further allege:

38.    WMATA failed to properly maintain its braking system, automatic brake-

retarding system, or other systems designed to prevent the two WMATA trains from colliding

and WMATA breached its duty to its passengers, among them Cameron Taihi Williams.

WMATA may have otherwise failed to maintain Train 112 and its various braking and safety

systems, in ways to be identified through discovery.

39.    Illustrative of Defendant WMATA's negligence is that before and at the

time of the accident, the first two cars of the moving train were two months overdue for

scheduled maintenance of some braking components.

40.    As a direct and proximate result of the negligence of Defendant WMATA, Train

112 was unable to stop in time before colliding with Train 214, causing Cameron Taihi Williams

to sustain severe, multiple and lethal injuries leading to his death, as well as to experience severe

pain and suffering, fear and anticipation of impending injury and death, and emotional distress,

both prior to and after impact of the colliding trains.

## COUNT IV
## NEGLIGENT TRAIN TRAFFIC CONTROL
## (WMATA and ALSTOM)

41.    The Plaintiffs reallege and incorporate by reference the allegations

contained in the preceding paragraphs of the Complaint, and further allege:

42. At all times mentioned herein, Defendant Alstom Signaling Inc. owed a duty of reasonable care of providing accurate train traffic control equipment, software and support, in order to allow WMATA passengers, including Cameron Taihi Williams, to travel safely.

43. A track circuit is an electrical circuit that includes a length of running rail and allows the presence of a train to be detected. The circuit also communicates commands and instructions between the track and the train. If a train tries to approach too closely to the rear of another train, information provided by the track circuits is used to slow or stop the second train before there is danger of a crash.

44. WMATA's automated trains are controlled by several electronic systems. The train protection system is made up of circuits embedded along the track, which range from 150 feet to a half-mile long. As trains cross the circuits, signals are transmitted down the line to following trains. The signals automatically set speeds, slowing or stopping a train so that it does not crash into the one in front.

45. The railroad system is divided into blocks, which are varying lengths of track, and computers are set to keep two blocks of distance between trains. As an added layer of control, another electronic system regulates train speeds and spacing and stops the trains as they enter stations. A third system controls overall train movements to maintain proper routing and keep trains on schedule and it is monitored by workers in WMATA's downtown central control room.

46. If the train protection system is working as designed, when one train begins to enter the two-block buffer behind another, the computers should automatically deploy the brakes on the second train and force it to stop.

47.     Sources from WMATA have confirmed that a review of the traffic control system showed that it failed to detect the idling train (Train 214), and thus failed to slow or stop the approaching train (Train 112).

48.     NTSB investigators performed a simulation on June 24, 2009, in which they positioned a train in the same location where the idling train was rear-ended on June 22, 2009. The system failed to detect that the idled test train was there.

49.     After the crash, federal investigators found "anomalies" in a key component of the electronic control system along the WMATA track north of the Fort Totten Metrorail station, suggesting that computer malfunctions were responsible, in whole or in part, for sending Train 112 crashing into Train 214, killing 9 unsuspecting and innocent passengers, including Cameron Taihi Williams, who relied on WMATA, and those companies like the Defendant Alstom Signaling, Inc, to provide for safe passage of the trains, with proper safeguards to prevent collisions.

50.     The findings show that Train 112 did not receive information that Train 214 was stopped ahead on the rails north of the Fort Totten Metrorail station.

51.     When the malfunctioning circuit failed to detect Train 214, the circuit assumed that the stretch of track in front of Train 112 was clear and set the speed of Train 112 at 59 m.p.h., and thereby hurtled Train 112 into Train 214.

52.     By failing to properly maintain its computer warning system, system of notice, or other systems designed to prevent the two WMATA trains from colliding, WMATA and Alstom breached their duty to its passengers, among them Cameron Taihi Williams. WMATA may have

failed to maintain Train 112 and its various safety systems and computerized prevention systems in other ways to be identified through discovery.

53.     By failing to properly design, install, inspect, test, and maintain its computer warning system, system of notice, or other systems designed to prevent the two WMATA trains from colliding, Defendants WMATA and Alstom Signaling Inc. breached their duty to provide accurate train traffic Control in order to allow WMATA passengers, including Cameron Taihi Williams, to travel safely. Defendants WMATA and Alstom Signaling Inc. may have failed its above duties regarding its various safety systems and computerized prevention systems *used* in the WMATA Metrorail system, in other ways to be identified through discovery.

54.     As a direct and proximate result of the negligence of Defendants WMATA and Alstom Signaling Inc., Train 112, on which Cameron Taihi Williams was a passenger for hire and riding, collided with Train 214 between the Takoma and the Fort Totten Metrorail stations in the District of Columbia on June 22, 2009, at 5:02 p.m., causing Cameron Taihi Williams to sustain severe, multiple and lethal injuries leading to his death, as well as to experience severe pain and suffering, fear and anticipation of impending injury and death, and emotional distress, both prior to and after impact of the colliding trains.

## COUNT V
## WRONGFUL DEATH
## (WMATA and ALSTOM)

55.     The Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint, and further allege:

56.     This claim arises under D.C. Code § 16-2701, et seq.

57.   The Plaintiffs allege that as a direct and proximate result of the negligence of the wrongful acts of the Defendants, the next of kin beneficiaries of the decedent—his mother Janice Williams and his four brothers, Kevin Williams, Erik Williams, Aaron Williams, and Isaiah Williams – incurred funeral and burial expenses, lost their share of Cameron Taihi Williams' anticipated future earnings, lost the pecuniary value of services, including the loss of care, education, training, guidance and advice, expected to be performed by the decedent, and lost any and all other damages recoverable under the wrongful death statute.

## COUNT VI
## SURVIVAL ACTION FOR INJURIES PRIOR TO DEATH
### (WMATA and ALSTOM)

58.   The Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint, and further allege:

59.   This claim arises under D.C. Code § 12-101.

60.   The decedent's right of action for injuries prior to his death caused by the negligent conduct of the Defendants survives in favor of Janice Williams and Isaiah Williams, as the duly appointed Co-Personal Representatives of the Estate of Cameron Taihi Williams.

61.   As a direct and proximate result of the Defendants' wrongful and negligent conduct, the decedent experienced pre-impact fright, extreme pain and suffering, fear and anticipation of impending injury and death, as well as severe emotional distress and psychic trauma prior to his death.

62.   As a direct and proximate result of the Defendants' wrongful and negligent conduct, the decedent's estate lost the probable future earnings and other economic and non-economic damages recoverable under the applicable District of Columbia law.

## PRAYER FOR RELIEF

For the foregoing reasons, the Plaintiffs respectfully pray for judgment against all the Defendants and request that this Court:

1.     Award the Plaintiffs compensatory damages against all the Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing in the amount of $25,000,000.00 (Twenty-five Million Dollars), or such larger amount to be proven at trial, including interest thereon;

2.     Award the Plaintiffs their reasonable costs and expenses incurred in this action; and

3.     Provide such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JACK H. OLENDER          #9563

HARLOW R. CASE          #270645

SANDRA H. ROBINSON     #386469

MELISSA RHEA          #367196

KAREN E. EVANS                    #426067
888 17th Street, N.W., 4th Floor
Washington, D.C. 20006
Attorneys for Plaintiffs

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury as to all issues so triable.

JACK H. OLENDER                    #9563

14